Fuld, J.
The record unequivocally establishes the absence of any possible defense to the action brought by the plaintiff and, accordingly, the courts below had no alternative but to grant her motion for summary judgment.
The action is for conversion of securities and cash in a stock brokerage account, carried by the defendants, entitled “ Mendoza y de la Torre Spl A/c #35 EC”, and the “ issues ” advanced by the defendants concern the ownership of that account and their status as pledgees. In our view, the record establishes beyond question that the plaintiff was the sole owner of that account and that the defendants, having asserted no personal adverse claims of their own against it, were not pledgees or innocent purchasers for value with respect to it.
We start with the undisputed and indisputable fact that Mendoza, the Cuban broker with whom the plaintiff dealt in Cuba, acknowledged in his letter of June 6, 1958, to the plaintiff that Special Account #35 E C was owned by the plaintiff alone; in so many words, he “certified” that “the account that appears on the books of Messrs. Jacques Coe & Co. * * * as Mendoza y de la Torre, ‘ Special Account Number 35 EC ’ * * * is the exclusive property of [the plaintiff], who can give orders to us or to [Coe].” Whether that letter was delivered to the defendants in June, 1958, simultaneously with the opening of the account, as the plaintiff asserts, or was not brought to their attention until September 8, 1960, when the plaintiff demanded the securities and funds in that account, as the defendants concede, is irrelevant. Nothing occurred during that period which in any way altered or affected the plaintiff’s title to the securities and funds in this account and, obviously, the unilateral act of Mendoza in writing the defendants, under date of February 29,1960, that Special Account #35 B C, a free *496 cash account, and his margined special omnibus account were to be treated as one, was ineffectual to alter the plaintiff’s rights. (See Le Marchant v. Moore, 150 N. Y. 209, 216.)
The Federal Reserve Board rules and the rules of the New York Stock Exchange authorize a broker, who carries margin accounts for his own customers on the prescribed minimum margin of 70%, to maintain with a member firm of the Stock Exchange an omnibus account on only 25% margin. Acting pursuant to those rules, Mendoza did open such an omnibus account with the defendants in 1950. Eight years later, on June 3, 1958, the plaintiff, a native of Cuba, instructed Mendoza to open an American account for her with the defendants. She delivered her personal check for $11,000, drawn on the Chase Manhattan Bank to his order, which he indorsed over to the defendants with written instructions, contained in a letter, also dated June 6, 1958, to open a new account with the defendants which, as indicated, they designated on their books as [1] ‘ Mendoza y de la Torre Spl A/c #35 R C “ R.C.” are the initials of the plaintiff’s name. The $11,000 was credited to that account and purchases of securities for the plaintiff’s account for cash were placed in this new account. From its inception and throughout its existence it was strictly a cash account, never a margin account. It necessarily follows, therefore, that Mendoza’s omnibus account could not possibly have been regarded as including or applying to this fully paid-up account.
We go further and note that the defendants’ handling of Special Account #35 R C leaves no doubt that the defendants knew that it belonged to the plaintiff. Securities were purchased and sold by the defendants upon instructions of Mendoza, the transactions were recorded on the defendants’ books in that account, dividends upon stocks listed in that account, as well as interest upon credit balances, were credited to that account, and these transactions were reflected in the defendants’ statements. Indeed, some of these statements were delivered to the plaintiff by the defendants in August of 1960. In addition, funds were transferred by the defendants from that account and deposited in the plaintiff’s own bank accounts, and on one occasion the defendants actually delivered their check to the plaintiff personally for the cash balance then in the special account. Moreover, in February of 1959, the defendants trans *497 ferred to Mendoza’s omnibus account $6,501.34 as an adjustment of advances made by Mendoza for the plaintiff’s account and that sum was charged to Special Account #35 R C. Here is another indication, an unequivocal one, that this account was no part of Mendoza’s omnibus account. If it had been, there would have been no reason or occasion to effect this transfer. These acts, and there were others, evidence full recognition that Special Account #35 R C was separate and apart from the omnibus account and that it belonged exclusively to the plaintiff.[1]
The course of conduct between the defendants and the plaintiff— who had a long personal acquaintanceship with Jacques Coe — the purchases of the securities for cash, the deliveries and remittances of funds by the defendants to the plaintiff, which were charged to Special Account #35 R C, constitute a definite appropriation and segregation of the plaintiff’s securities in that account, free of any margin or indebtedness due to the defendants from the plaintiff.
As noted above, the defendants do not deny that the plaintiff is the exclusive owner of the securities and funds in this account. However, in an attempt to avoid the consequences necessarily flowing from these facts, the defendants seek to create a triable issue by asserting that they had not established any broker-customer relationship with the plaintiff. But, as we held in the Le Marchant case (150 N. Y. 209, supra), the existence of such a relationship is immaterial; quoting with approval from Roca v. Byrne (145 N. Y. 182), the court wrote (p. 218):
‘ ‘ ‘ The general and Well-recognized rule is, and has been, that a principal is entitled, in all cases, when he can trace his property, whether it be in the hands of the agent, or of his representatives, or of third persons, to reclaim it and it is immaterial that it may have been converted into money; so only that it is in condition to be distinguished from the other property or assets of the agent. ’ ”
*498 Thus, if the defendants were ever entitled to regard Mendoza as the owner, they certainly were not privileged to do so once they were notified in September of 1960 of the plaintiff’s ‘[1] exclusive ’ ’ ownership of the account. From that time on they were bound to recognize the plaintiff’s claim.
Although the defendants concede that the plaintiff is not indebted to them in any amount, they claim that she may, perhaps, be indebted to Mendoza. Manifestly, the assertion of imagined or illusory rights of a third person (Mendoza), despite the latter’s own declaration that the account is the plaintiff’s “ exclusive property ”, should not be permitted to defeat the grant of summary judgment.
Nor, as we have already intimated, are any rights of an innocent purchaser or pledgee for value involved. The defendants did not make any loan or extend any credit to the plaintiff in connection with this account, nor did they resort to the plaintiff’s securities or the cash credit balances prior to September 8, 1960 — the day on which the defendants admitted that they saw Mendoza’s June 6, 1958 letter certifying to the plaintiff’s exclusive ownership of the account. Except for the transfer of the $6,501.34 to the omnibus account, to which we referred above, Special Account #35 B C remained intact throughout.[2] Mendoza’s instructions to the defendants on February 29, 1960 to regard the omnibus account and Special Account #35 B C as being one account constituted an attempted conversion by him of the plaintiff’s securities and funds, and the defendants’ refusal to turn them over to the plaintiff after September 8, 1960 was unauthorized and improper. (See Hall v. Bache, 235 App. Div. 256.)
The judgment appealed from should be affirmed, with costs.

. It is of considerable consequence that the title of the account on the defendants’ books, and on 16 of the 19 statements of account rendered by the defendants, consistently appeared as “ Special A/c #35 R C ”, without any reference being made to “ omnibus ” — except on three occasions when the insertion was obviously made for self-serving purposes. It is entirely immaterial that the statements were rendered to Mendoza who transmitted them to the plaintiff.

. Parenthetically, we would but add that there is nothing to indicate that the debit balance, in Mendoza’s omnibus account, of $74,283.97 as of December 1, 1960 was not sufficiently secured by the collateral in that account and the other sub-omnibus numbered accounts, other than Special Account =)j=35 R C.